In the Matter of Proceedings by the WASHINGTON STREET ASYLUM AND PARK RAILROAD COMPANY to Acquire a Crossing of the Railroad of the SYRACUSE, BINGHAMTON AND NEW YORK RAILROAD COMPANY.

Corporations for transporting passengers or freight by horses as a motive power over railroads in the streets of cities in this state, except the city of New York, may be formed under the general railroad act of 1850 (Chap. 140, Laws of 1850) and its amendments.

*New York Cable Company* v. *Mayor, etc.* (104 N. Y. 14); *In re New York District Railway Company* (107 id. 42); *People ex rel. Third Avenue Railroad Company* v. *Newton* (112 id. 396) distinguished.

The fact that said act of 1850 contains provisions which can only be applied to railroads using some other motive power than horses, furnishes no argument against the application of its other sections to horse railroads.

The uniform recognition on the part of the officers of the state government, of the right to file articles of association of street railroad companies, under the general railroad act of 1850, and of the legality of this kind of corporations thus formed, is very considerable, if not controlling, weight in the interpretation of said act.

The provision of the act of 1869 (Laws of 1869, chap. 917), which authorizes the consolidation of certain railroad companies, exempting street railroads from its provisions (§ 7), was repealed by implication by the act of 1875 (Chap. 108, Laws of 1875), entitled "An act in relation to railroad corporations," which provides that in any case where two or more railroad companies shall have been, or shall hereafter be, organized under the general laws of this state, the whole of whose lines, as located by them respectively, shall form one continuous and connecting line of road, the said companies may consolidate their lines of road, stock, franchises and property according to the existing laws of this state relating to the consolidation of railroad companies, and the restriction contained in the act of 1869 was thereby removed.

Where the provisions of a statute cannot have their full force and effect without the repeal of a former statute, such former statute must be deemed repealed by implication; if the provisions of the two statutes are inconsistent, the latter must prevail as the latest exhibition of the will of the law-making power.

Reported below, 52 Hun, 311.

(Argued June 20, 1889; decided October 8, 1889.)

APPEAL from order of the General Term of the Supreme Court in the fourth judicial department, made February 12, 1889, which reversed an order of Special Term denying the

prayer. of the petitioner for the appointment of commissioners and remitting proceedings to Special Term for further action.

This was an application, under subdivision 6 of section 28 of chapter 140 of the Laws of 1850, as amended by sections 1 and 2 of chapter 583 of the Laws of 1880, for the appointment of commissioners to ascertain and determine the point and manner of a crossing and the compensation to be paid therefor.

The petitioner and the railroad sought to be crossed are street railroads operated in the city of Binghamton, which were incorporated under the general railroad act of 1850. The objection to the application was that the petitioner was not a legally and validly organized corporation.

The further material facts are stated in the opinion.

*D. S. Richards* for appellant. Chapter 108 of the Laws of 1875, on the subject of railroad consolidations, has made the act of 1869 applicable to all railroads. (Potter's Dwarris on Statutes, 145; *McCartee* v. *Orphan Asylum*, 9 Cow. 437.) There was occasion for the act of 1875 known to the legislature, for in each of the years 1872 and 1873 special acts were passed allowing companies that were then constructing railroads to consolidate. (Laws 1872, chap. 764; Laws 1873, chap. 24.) If the two statutes, on any reasonable construction, can stand together, and if the latter enactment has scope to operate, and an apparent purpose of its own, without working a repeal of the earlier provision, both must be upheld and harmonized." (*In re Cruiser*, 89 N. Y. 401, 403; *Mongeon* v. *People, etc.*, 55 id. 613; *Mark* v. *State*, 97 id. 573, 578; *In re Evergreens*, 47 id. 216; *Powers* v. *Shepard*, 48 id. 540.) A special and local statute providing for a particular case or class of cases is not repealed or amended by a statute general in its terms, unless the intent to repeal is manifest, although the terms of the general act would, but for the special law, include the cases provided for by the latter. (*In re Com. of Central Park*, 50 N. Y. 493; *In re N. Y. D. R. R. Co.*, 107 id. 54; *N. Y. Cable Co.* v.

*Mayor, etc.*, 104 id. 1; *People ex rel.* v. *Newton*, 112 id. 402.) The general railroad law (Laws 1850, chap 140) gives no authority for the construction of street railroads. (§ 28, subd. 5.) The corporations consolidating did not derive corporate existence under the act of 1850. Their articles of association filed showed on their face that the objects of the incorporation was to construct and operate a street railroad. (*In re K. C. El. R. R. Co.*, 41 Hun, 425; *In re L. & B. R. R. Co.*, 19 id. 38; *In re S. A. R. Co.*, 72 N. Y. 330; 1 Redfield on Railways, 638.)

*W. J. Welsh* for respondent. The public policy of this state, as manifested by numerous acts of the legislature, has always been, not only to afford the fullest scope for the consolidation and re-organization of railroad corporations, but also for the transfer and use of such roads and their franchises by one corporation to another. (*Woodruff* v. *Erie R. Co.*, 93 N. Y. 615, 616.) The Washington Street and State Asylum Railroad Company and Park Avenue Railroad Company were properly incorporated under the general railroad law, and were railroad corporations competent to consolidate. (112 N. Y. 403; 31 Hun, 72; 95 N. Y. 663; *In re N. Y. D. R. R. Co.*, 107 id. 42; *Easton* v. *Pickersgill*, 55 id. 310, 367; *Fort* v. *Burch*, 6 Barb. 60; *Striker* v. *Kelly*, 7 Hill, 9; *U. S.* v. *Dickinson*, 15 Pet. 161.) The consolidation carried with it all the rights and all the liabilities of each of the companies so consolidated. (Laws of 1869, chap. 917, § 4; Laws of 1875, chap. 108, § 1; Wood on Railroads, 1681, § 486.) There is not the same necessity, for the simple right to cross or intersect a railroad, to require all the formalities and conditions which are required before the title to land can be taken and exclusively appropriated for the construction of a road. (*In re L. & B. R. R. Co.*, 77 N. Y. 561.) The petition was sufficient in form and fact. (77 N. Y. 561.)

PECKHAM, J. Two grounds for denying the prayer of the petitioner for the appointment of a commission have been

argued before us.   It has been urged (1) that the two original companies, whose valid consolidation is herein denied, were never themselves legally incorporated, and, (2), if they were so incorporated, yet even then they could not become consolidated into a new corporation, because there is no law under which such consolidation could be effected.

We think neither ground is well taken.   As to the first.   Both corporations were organized under the general railroad act of 1850 and its amendments.   It is claimed that such act does not relate to the incorporation of street railroads.   This claim is at war with the generally received construction of the act.   Ever since its passage in 1850, or at least within a very few years thereafter, corporations for transporting passengers by horses, as a motive power over railroads in the streets of cities, have been formed under and by virtue of the provisions of such act, and no doubt has thus far been suggested as to the validity of such corporations.   Corporations thus formed are in existence in Brooklyn, Albany, Binghamton, Kingston, Cohoes and other cities of the state.   There is nothing in the act of 1850 which prohibits (outside of the city of New York), such corporations from being formed under its provisions, and the language of the act is general and broad enough to include corporations formed for such a purpose.

One or two expressions in opinions written by judges of this court have been cited as evidence that the general railroad act of 1850 had no application to street railroads.   The cases from which these extracts have been taken are: *New York Cable Company* v. *Mayor, etc.* (104 N. Y. 1, 14); *Matter of New York District Railway Company* (107 id. 42, 53, 54); *People ex rel. Third Avenue Railroad Company* v. *Newton* (112 N. Y. 396, 401).   Each one of the above cases arose in New York city, and in regard to that city it is admitted that the general railroad act has now no application, for, by chapter 10 of the Laws of 1860, it was made unlawful to thereafter lay, construct or operate a railroad in New York city except under the authority of the legislature to be thereafter granted. The remark of Judge RAPALLO in the first cited case, that, up

to the time of the passage of the general surface street railroad act of 1884, there had been no law in force under which street railroads could be constructed except the rapid transit act, the general railroad act of 1850 being inapplicable to street railways in cities, was not exactly accurate if applied to all the cities in the state, but was in entire accord with the truth in regard to the particular city (New York) which he was writing about and in which the corporation existed whose rights were then under review. The inclusion of the other cities of the state was not in any way material to his argument and was probably a mere inadvertent expression of the learned judge, the important fact being that the general railroad act of 1850 did not apply to street railways in the city of New York. In the second case above cited Judge FINCH makes the remark that we had held that the general railroad act of 1850 had no application to street railroads, and he refers to the case of the Cable Company above alluded to. The same may be said of that remark as I have just said of Judge RAPALLO's. It was made in relation to a New York Company, which claimed the right to build its road underground from the general railroad act of 1850 ; and it was stated that such act had no relation to street railroads, but that if it had, the act of 1860 (chap. 10) took it away so far as New York city was concerned. It was New York city which was in the mind of the learned judge, and not the applicability of the general railroad act to street railroad companies in other cities of the state. But he continued the discussion by expressly stating that the truth might be that the company derived its corporate existence from the act of 1850, but not its right to construct its contemplated road, because by the act of 1860 such right in New York city was thereafter to be the subject of special legislation. In the last case cited the question was not in issue, and the remark was a general one that the act of 1850 gives no authority for the construction of street railroads, and if it were limited to New York city (by reason of the passage of the act of 1860), it is certainly a correct statement of the fact. It was made in reference to a New York corporation and it

was followed up by a statement that if any right were gained by an organization under that act, the company was required to do the things mentioned in the opinion, and which, it was argued, left it without any authority to do the acts which it proposed to do.

Not one of the learned judges had the exact question in mind as to the applicability of the act of 1850 to any city other than New York, and in regard to New York the remarks of each were correct. The question is entirely open in this court, and we have no hesitation in saying that corporations might be legally formed under the act in question for the transportation of passengers or freight, or both, over railroads in the streets of cities where horses were to be the motive power, excepting the city of New York.

The legislature has recognized the general applicability of the law of 1850 to street railroads by the passage of the act, chapter 906 of the Laws of 1867, wherein it is enacted that section 31 of the Law of 1850 shall not apply to horse or street railroads except as thereinafter provided; a clear implication that otherwise it would apply, and that the act generally did so apply. Undoubtedly there are some provisions in the act which can only be applied to railroads where the motive power is steam or some other power than horses. But that furnishes no argument against the application of any of its other sections to horse railroads. For more than twenty-five years corporations of that nature have been formed under it, and no state officer whose duty it would have been to refuse to file such articles of association if the act did not provide for their organization has ever thus refused; but, on the contrary, there would seem to have been an uniform recognition of the right to file such articles and of the legality of this kind of corporation thus formed. Such acquiescence and recognition on the part of the officers of the government are of very considerable, if not of controlling weight in the interpretation of a general act of the legislature relating to public objects like the one under discussion. (*Easton* v. *Pickersgill*, 55 N. Y. 310; *People* v. *Dayton*, Id. 367.)

The consequences of a different construction at this late day, and after an acquiescence of so long a time, would, or might be, disastrous in the highest degree to other interests existing and founded upon the legality of an incorporation for horse railroad purposes under the act of 1850, and this court would be reluctant to give such a construction to the act, unless called upon by the plainest language of the legislature, so plain, indeed, that there could be no rational argument advanced in favor of the other view.

No such case is made out here. We conclude that the first ground for denying the prayer of the petitioner is untenable. The second ground we think there is no force in. By the act of 1869 (Chap. 917), which authorizes the consolidation of certain railroad companies, there was contained a clause in section 7 specially exempting street railroads from its provisions. Up to 1875 street railroads could not have taken advantage of the provisions of the act of 1869, but in 1875 the legislature passed an act entitled "An act in relation to railroad corporations," and being chapter 108 of the laws of that year. That act did not purport to be an amendment of the act of 1869 or of any act. It was original legislation upon the subject of railroad corporations, and the subject was contained in the first section of the act, which provided that, "in any case where two or more railroad companies shall have been, or shall hereafter be organized under the general laws of this state, the whole of whose lines, as located by them, respectively, shall form one continuous and connecting line of road, the said companies may consolidate their lines of road, stock, franchises and property according to the existing laws of this state relating to the consolidation of railroad companies." This act is no mere amendment of the act of 1869, nor does it purport to be such. The act of 1869, it is true, restricts the power to consolidate to a railroad company or corporation organized under the laws of this state, or of this state and any other state, and operating a railroad either wholly within, or partly within and partly without this state; and it is true that the act of 1875 does not contain any such restriction upon a railroad company

that may avail itself of the privileges conferred by the act, but it not only takes away the restriction contained in the act of 1869, that it must be an organization *operating* a railroad, for it goes further, and, by affirmative language, it includes any case where two or more railroad companies shall have been, or shall hereafter be organized under the laws of this state. That provision is wholly inconsistent with the restriction contained in the seventh section of the act of 1869, which says that the provisions of that act shall not apply to street railroads.

It is true that repeals by implication are not favored, but where the provisions of the later statute cannot have their full force and effect without the repeal of the former statute, such former statute must be deemed to be repealed by implication, or otherwise the plain intent of the legislature, as evidenced by its latest expression, is prevented from due operation by an inconsistent former statute. In such cases, where the provisions are inconsistent, the latter must prevail as the latest exhibition of the will of the law-making power. By the first statute the legislature said its provisions shall not extend to street railroads. By the second statute it says that any railroad corporation, under the circumstance therein named, may consolidate according to the existing laws of the state relating to the consolidation of railroad companies. To restrict, therefore, this language to the same class of railroad corporations that were spoken of in the earlier statute, is to wholly fail to give effect to the plain language of the act. Full effect cannot be given to that language by merely saying that it shall include the case of railroad corporations which have not yet built, but have simply located their road. That is one enlargement effected by the statute of 1875. But the other is equally plain. We think no importance is to be attached to the fact that the legislature, between 1869 and 1875, passed one or two special acts allowing companies that were then constructing railroads to consolidate. Before the act of 1875 it required a special act to include such a case. But after the

act of 1875 companies then engaged in the construction of their railroads could consolidate under the provisions of that act, because the restriction contained in the act of 1869 was taken away and all railroad companies organized as above stated were by that act permitted to consolidate.

It is unnecessary to continue the discussion further. The opinion delivered at the General Term, we think, is entirely satisfactory upon the question, and we agree with the conclusions arrived at by that court. For these reasons the order of the General Term should be affirmed, with costs to the petitioner, and the proceedings remitted to the Special Term for further action.

All concur.

Ordered accordingly.